We'll go on to the next case on the calendar, United States v. I don't know if it's Reiche. Rich. Rich. Thank you for helping with the pronunciation. It's case number 21-30275. And we should have, yes, two counsel present in the courtroom. Good morning. Good morning. I'll start by addressing the first error, which is the incorrect application of Section 2A1.5.2, where the court, the trial court put the base offense level at 18 instead of 9. And the basis for this error is that the trial court relied on insufficient evidence to support the subjective component for reckless endangerment to support the base offense level of 18. In the cases that we cited, particularly Rodriguez, Gard and Hyer, there are two components for proving reckless endangerment, which is a material element for reckless endangerment. The two components would be a subjective component, which is what did Ms. Rich know? Did she know of the risks and did she deliberately ignore those risks? What evidence supports that? And then the objective component is, was the defendant's actions a gross deviation of the reason or the standard of care from a reasonable person? We're focusing on the first component, the subjective. It's a risk. We get it. We read the briefs and that's, I think you're right. That's the point. So why was it error? So the error was because in this particular case, what we have here is nothing to show that Ms. Rich was aware that placing the shunts would do anything other than to stop the trains. That's the evidence that we presented during our sentencing. That's the evidence that we presented as exhibits. And there was nothing that the government produced to refute that evidence. What the government relied on was this argument that Rich, Ms. Rich, you know, she evaded the capture. She gave inconsistent statements to the police. She was dressed in black, everything that would demonstrate that she's guilty, but nothing at all to demonstrate and prove that she was aware of the risks. And I think the most important piece of evidence that really proves this point is that even at trial, the government had to call an expert witness to testify about shunting and to testify about how shunting can endanger the safety of the trains. And that's why this case is most analogous, at least from my perspective, to Garden Hire. Because in Garden Hire, you have a defendant who was told in advance that shining a laser beam at a plane, or I'm sorry, in someone's eyes can blind them. And after knowing that, the defendant shines a laser beam at a plane. But in that case, our opinion says that it was a very young person, an 18-year-old who was bored. He'd shined the laser at a lot of things, like at a mailbox, you know, sort of randomly. And then he shined it up in the sky at a plane. So I think the distinction there, what seemed to me to be the difference is his friend had told him, his buddy had told him, if you shine that directly in somebody's eye, that could blind someone. And that that was quite different than being aware of the risk of blinding a pilot who's several thousand feet up in the air. I mean, you've read the case. So why is that helpful here? You think I'm misreading it? No, no, no. You're absolutely right, because what that lacks here is evidence that Garden Hire was aware of the risk. The 18-year-old was certainly aware of the risk. He was bored and doing something that was kind of maybe kind of a dumb thing to do. But this is much more purposeful conduct. It's a really big train. She's trying to stop the train, right? And what you're trying to convince us is that she didn't have reason to be aware of the risk that stopping this massive locomotive was a dangerous thing to do. Right. And that's because, similar to Garden Hire, you may have evidence to show that a reasonable person would not do something like that. You may have evidence to show that a reasonable person is not going to interfere with the train signal systems. But what's lacking, similar to what was lacking in Garden Hire and Rodriguez, is, is there anything to show that, number one, Ms. Rich knew, and I think the evidence is clear that there was no evidence that went to her direct knowledge. So then what the courts seem to rely on, and we have to look at the court's language, you don't need to be very intelligent to understand that tampering with a signal system of a mass vehicle, such as a freight train loaded with who knows how many cars, can cause a significant event. This is really a translation of either Ms. Rich should have known, right, or what it's basically saying is that a reasonable person would not do something to that effect. But nowhere does the language that the trial court used show that the evidence established that it is universally known. But isn't it, I mean, you know, you grow up watching TV, you see cartoons with trains not being able to stop. You watch, you know, some terrible Michael Bay movie and trains derailing. I mean, it's pretty obvious when you have a huge locomotive going fast, sudden stop, it can cause derailment. I mean, this is just a common trope. If you just, you know, read books, fiction books, movies, TVs, I mean, it seems so obvious that that would happen if you, you know, have something very heavy moving at fast speed and it's required to stop quickly. And I would respectfully disagree because that's why the government had to call an expert to explain how the momentum of a train is not as simple as, you know, seeing a red light and stopping. But wasn't the expert broader than that? Wasn't the expert explaining the whole, you know, how the maneuver that she accomplished was going to stop the train and how the tracks are in two mile long increments? And it was a much broader swath of testimony, wasn't it? Absolutely, on a technical level. But that does not prove that Miss Rich was aware or that it was universally known. Well, we know she was aware because she was trying to stop the train, right? The enhancement requires awareness of the risks. Sir, I understand what that enhancement says. I'm just trying to break this down. Unlike this child with the, okay, 18, with the laser in Garden Hire, we don't have a dispute of what she was trying to do. Stop the train, right? There's no dispute that she was trying to stop the train. So the only question is whether she's so she's aware she can stop the train because that's exactly what she's trying to do. And she had some Internet help. You know how one does that. Right. Okay. So the question is just whether she she perceived she was aware that was a risky thing to do. That's it. Right. Risk to the endangering the safety of the trains. I think that's what the enhancement requires. That's why there's such an incredible jump. And that's why the court requires clear and convincing evidence. Right. And so getting back to Judge Lee's question, because I thought you were straying off a little bit about. But I think we do have agreement. She was. It's uncontested. She was. She was trying to stop the train. And the question is getting back to Lee's question. Judge Lee's question. Awareness of the risk that that was that was going to not to stop the train, but be a dangerous present a real danger. Right. And that's where the evidence lacks. And I think that lacks based on what what the court was finding. In fact, and that is that the court was looking this from a general perspective. As opposed to whether it is universally known that causing the signal system to turn red can cause a catastrophic event. And in fact, I think the government only proved that perhaps she should have known and didn't. And it fell short of showing that she really had awareness. Is that it? Yes. And should have known is not the correct standard. That's a negligent standard. I know what the standard is. I'm just trying to make sure that I understand your argument. Certainly. Thanks. Thank you. And then with my remaining time, with respect to the acceptance of responsibility, what we have here is the plain text of the guideline inconsistent with the commentary. And when there's that inconsistency, the commentary deserves no deference. When there's that inconsistency, the court must rely on the plain text of the guideline. And we know that the trial court relied on the commentary because the trial judge, using the trial judge's language, I want to read it here. We do reward people, and that's what the guidelines do, for that early acceptance, understanding the severity of their actions and not putting the government to its burden. And so I'm looking at the guideline. The guideline says, if a defendant clearly demonstrates acceptance of responsibility, decrease his or her sentence by two levels. I'm failing to see how the note is inconsistent or limiting on that. Clearly demonstrates acceptance of responsibility. That doesn't say, I guess it doesn't expressly say one way or another whether timing is relevant, but I'm failing to see how timing limits what is said there. How is that not a relevant factor in terms of clearly demonstrates acceptance of responsibility? So the commentary says that this guideline is not intended for those who put the government to its burden, suggesting that this guideline, except under the rare circumstances like preserving a constitutional issue or presenting an affirmative defense, the guideline is not appropriate when the defendant goes to trial. Nowhere in the text of the guideline does it say anything about trial. It also nowhere says anything at all about timing. And so then it would suggest that to the extent timing might be relevant in figuring out whether somebody is actually accepting responsibility or not, then the note is not impacting what the actual guideline is. Well, what that does is it interjects this additional condition that if you go, if you accept responsibility after a trial, this guideline would not apply. And when we look at the trial judge's decision about denying acceptance of responsibility, it's nowhere does the judge mention anything about the sincerity of Ms. Rich's acceptance of responsibility. I don't think that's true. I think he does make a statement about he would have given more credence to her letter had she behaved a little bit differently. I thought it was had she just, for example, admitted acceptance in the middle of trial, which gets back to not putting the government to its burden. So in other words, read it that way. But but had she gotten, you know, stood up in the middle of trial and said, I'm sorry, that relieves the government of its burden. I don't think there was a dispute about her sincerity. It really had to do with timing. And that's the error. You're over your time. When you come back, we'll put another minute on the clock. I appreciate that.  You bet. We'll hear from the government, please. Good morning, Your Honors, and may it please the Court. I'm Teal Miller on behalf of the United States. I'm going to start by just a quick note on why I think Judge Forrest, you're correct about what the district court meant when it said it would give more credit to the letter. And then I'll turn to the recklessness issue. The letter tried to thread a needle between accepting responsibility and denying knowledge that this was dangerous. And when the district court said, I'd give more credit to her letter, that was in response to the claim in her letter that she didn't realize this was dangerous until she heard the evidence at trial. But we know that's not true because at SER 48, we've included the information, which is the first piece of paper that was filed in this case, which tells her exactly why this was dangerous. And so when the district court said, I would give more credit to your letter, it was saying, I don't believe you're fully accepting responsibility because you're trying to avoid me making a finding that you behaved recklessly while also trying to accept responsibility, and you can't have it both ways. As to recklessness, I want to point this court to what the district court judge said when it made this finding and explained why that finding wasn't clear error. This is at page 42 of the excerpts. The court said, and counsel has already quoted this, but I think it's really significant, you don't need to be very intelligent to understand that tampering with the signaling system of a massive vehicle, such as a freight train, loaded with who knows how many cars, can cause a significant event. And what's key there is tampering with the signaling system. Rich is trying to frame this as, effectively, I was just putting up a red light. But she did more than that. She knowingly tampered with the signaling system for freight trains, and freight trains run on rails. There's a risk of colliding with other freight trains and a risk of colliding with cars, which is apparent because it's common experience to encounter railroad crossings as a motorist. That's one piece of the record that I may not have read carefully enough to fully understand. The information that she searched on the Internet about shunting and the activities she engaged in, did it clearly explain that the traffic crossing signals were going to be impacted by this activity? Or did it only talk about sort of the tracks themselves and the signals that trains are seeing? So it didn't, although we know she hasn't submitted everything she looked at, because she used a technique that's not mentioned in any of the Internet posts that she submitted to the court. So we know she did more research than she has submitted to the court. But it did not mention crossings with motorists. But what the government argued and what the court accepted was that it's a signaling system, and we know there's a signaling system for this transportation system for a reason, and that reason is safety. And it is reckless to interfere with, to tamper with a signaling system, even if what you think you're going to do is just stop it. It's not exonerating to say, I didn't see any indication that anything else would happen. That's actually further evidence of your recklessness. You probably saw me wince when you said we know there's a signaling system and the purpose is safety, as though the only purpose would have to be safety, as opposed to controlling the train traffic and whatnot. And I'm not sure the record tells me that. Well, Your Honor, I think that the district court thought that was obvious. And, of course, the signaling system can have two purposes. It can control train traffic, but it can do so to avoid collisions between trains. Well, exactly. But I think your statement, I just wonder if your statement maybe went just a tad too far because, right, because there's an explanation about the tracks being in two-mile-long increments because it takes two miles for these things to stop. So it's, you know, certainly very significant. And I don't mean to split hairs. But when you said that I think your position was that we know there's a reason for the signaling system and that reason is safety, as though that has to be the only reason. It is not our position, and I did not mean to say, and I apologize, that that's the only reason. I'm just saying it's an obvious reason. Okay. And I think that's what the district court pointed to when he talked about tampering with the signaling system, which was really rejecting Rich's effort to sort of characterize this as simply throwing up a stop sign. It seemed to me that the Internet materials didn't show exactly how to do this, and you've just confirmed that. Yes, that's right. Confirmed as much. What's the most damaging information from the Internet materials that you can confirm? Two things, and this is at page 65 and then page 66 of the record. At page 65 of the record, this activity is referred to as rail sabotage. I think the word sabotage is a clear indicator to someone who's admittedly doing research that what they're doing involves a risk of disruption. Opposing counsel has cited the third definition of sabotage from Webster's. He's cut off the end of that definition. That definition, he quotes, an act or process to hamper, period. It's actually an act or process to hamper or hurt. And I think or hurt is in the disjunctive, so perhaps it was a fair usage of that quotation. But I think if you look at or hurt and the other two definitions and also just your common sense understanding of what it means to sabotage something, it's a destructive act. There's a risk of harm, a risk of injury with a destructive act. And when you couple that with the obvious fact that freight trains are massive, that the engines are massive, they're carrying many, many cars with them, the obviousness here, it was not clear error for the district court to conclude that it was obvious. And I think the distinction with guard and hire that the court's question suggests is correct, which is guard and hire referred to what the way a laser works when you point it at a car as, quote, counterintuitive, whereas the injury, the risk here, the danger here is intuitive. And that's a distinction. And, of course, there are also other distinctions with the defendant in guard and hire. When he was contacted, the police said, it was me with the laser. Ms. Rich, you know, dressed in black, left her cell phone behind, tried to evade the conversation. And then also she acknowledges she does research. If the court has no further questions, we ask that the below guideline sentence be affirmed. Any further questions? Looks like there aren't any. Thank you. Excuse me. At the outset, if I could just ask you a question. In your argument a couple of times, you referenced the fact that the government used an expert as an example of why this isn't an obvious issue. That strikes me as not making sense because the government at trial has beyond the reasonable doubt burden and is doing something other than just establishing what people know about trains. That's not the function of what it was doing at trial. So why is that relevant? So the expert needed to explain how shunting can endanger or how it impacts the signaling system. And obviously the expert also testified about the dangers associated with that. I feel that the government needed to present that expert to educate the jury that shunting can lead to dangerous events, even though only one out of 42 trains involved some kind of accident. That didn't really involve an accident. It was involved a decoupling. But of the 42 shunting incidents, there were no derailments. The question that I would ask this court to really focus on is, does the record show for sentencing that it is universally known that causing the signal system to turn red can endanger the safety of the train? That's number one. And then with respect to acceptance of responsibility, it's not whether Ms. Rich contested recklessness because that's not a material element of the crime of conviction. Did she demonstrate clear acceptance to the crime that she was convicted of, which was interfering with the signal systems? Contesting the base offense level is not part of contesting the crime of conviction. So the fact that she's contesting recklessness really should bear no weight. And the judge's decision to deny acceptance focused, as I see it, and the court obviously can disagree, but the way I see it, focused mainly and primarily on the timing of her acceptance, which tells me he relied on the commentary. I appreciate the court putting this on the fast track of consideration. Just for everyone to know, Ms. Rich is expected or she would reach her six-month mark on October the 1st. And really my goal is to get her back in front of the sentencing judge and ask for a six-month sentence consistent with what the co-defendant got. And that would certainly be easier if we obviously had a different base offense level and a decision on the acceptance of responsibility in an expedited manner. I appreciate that. Thank you. You're welcome. Thank you both for your arguments. We'll take this under advisement.
judges: CHRISTEN, LEE, FORREST